## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **JOSEPH E. STUMP**<br>38754 Old Wheatland Road<br>Waterford, VA  20197<br><br>                   Plaintiff,<br><br>       v.<br><br>**JEH CHARLES JOHNSON, SECRETARY**<br>**U.S. DEPARTMENT OF**<br>**HOMELAND SECURITY/**<br>**UNITED STATES SECRET SERVICE**<br>Washington, DC 20528<br>                  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.<br>) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

1.     Plaintiff Lieutenant Joseph E. Stump brings this action for damages based on the denial of his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended, (hereafter "ADA").  Specifically, the United States Secret Service, an agency within the United States Department of Homeland Security, (hereinafter "the Agency" or "Defendant") discriminated against Lt. Stump because of his disability, perceived disability and/or association with a disabled person by denying him a promotion to the position of Captain.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343(a)(4), and 42 U.S.C. § 12117.

3.     Pursuant to 28 U.S.C. § 1391(e), venue is proper in the District of Columbia which is the location of the Agency's principal office, where Plaintiff worked while employed at

the Agency and where, upon information and belief, the employment records relevant to the Complaint are located.

## THE PARTIES

4.     Plaintiff Joseph E. Stump is currently a Lieutenant in the Uniformed Division ("UD") of the U.S. Secret Service ("USSS"), U.S. Department of Homeland Security.   The Agency hired Lt. Stump as an Officer in 1984.   In 2004 and 2005, Lt. Stump had several serious work related injuries which caused him to take time off from work and caused physical impairments that substantially limited several major life activities.   Furthermore, as a result of these injuries, USSS management perceived Lt. Stump as being disabled.   Lt. Stump also has a son who has been diagnosed as autistic.

5.     Defendant Jeh Charles Johnson is the Secretary of the U.S. Department of Homeland Security.   Lt. Stump brings suit against Secretary Johnson in his official capacity as provided by law based on his executive responsibility for administering the personnel policies of the Agency and his responsibility to enforce and promote equal employment opportunity throughout the Agency.   During the relevant time period, the Agency employed over 500 employees.

6.     Chief Curtis Eldridge, U.S. Secret Service, is not a named defendant in this lawsuit, but is the responsible management official and one of the deciding officials who did not select Lt. Stump for promotion to the position as Captain.

7.     Deputy Chief Kevin Simpson, U.S. Secret Service, is not a named defendant in this lawsuit, but is one of the deciding officials who did not select Lt. Stump for promotion to the position as Captain.

## FACTS

8.      The Agency hired Lt. Stump in 1984 as an Officer in the Uniformed Division ("UD") of the USSS and he was, and still is, stationed in Washington, DC.  Subsequently, the Agency promoted Lt. Stump to Sergeant in 1990 and to Lieutenant in 1996.  Lt. Stump served as an instructor in the UD's Training Academy from 1990 through 1994.  In his approximately 30 years of service to the USSS, Lt. Stump has received numerous commendations and awards for his work.  Similarly situated UD officers with Lt. Stump's seniority and service record have not only been promoted to the rank of Captain, but many are also currently employed at the Inspector level with the USSS.

### Lt. Stump's Injuries and Perception of Disability by USSS Management

9.      On February 4, 2004, while on duty, Lt. Stump slipped on some ice near a set of marble stairs within the grounds of the White House.  Given the security associated with the location of Lt. Stump's accident, the incident was widely broadcast to his fellow officers as special procedures had to be followed to evacuate Lt. Stump and make arrangements for his transport to the hospital.

10.     As a result of this on-the-job injury, Lt. Stump was diagnosed with herniated disks in his back and neck.  From approximately February 2004 to October 2004, Lt. Stump was on leave without pay and receiving workers compensation.

11.     During the time that Lt. Stump was recovering, Lt. Stump's disability caused him to be unable to work during that time period.  Lt. Stump's impairment also caused him to have a loss of strength in his left arm and numbness.  Lt. Stump further had difficulty sleeping and often slept in a chair instead of a bed.  Lt. Stump only partially recovered from his injuries and will need surgery to correct the condition.  Lt. Stump takes over the counter pain medication, a

prescription of Percoset and uses a home traction unit.  However, the Percoset upsets Lt. Stump's stomach and he is not able to work when he takes that medication.  Lt. Stump was substantially limited in the major life activities of working, walking, lifting, sleeping and concentrating, among others, during his recuperation.

12.     Lt. Stump returned to work in a restricted duty capacity in October 2004 and he returned to full duty status in January 2005.  Although Lt. Stump was able to perform his duties as Lieutenant, and would have been able to perform all the duties of the Captain position, USSS management nonetheless considered and perceived Lt. Stump to be disabled.

13.     Lt. Stump works in a very elite security service.  Upon information and belief, given the highly competitive environment and military background of USSS employees, any injury sustained by an officer is considered a weakness and a detrimental shortcoming to the officer's career.

14.     Compounding his injury in February 2004 and corresponding recovery of nearly one year, Lt. Stump sustained yet another serious on-the-job injury within months of his return in January 2005 to full duty status.  Specifically, on April 7, 2005, Lt. Stump severely injured himself at work when he reached into a box and a piece of wood became lodged in his hand.  Lt. Stump was bleeding and immediately rushed to the hospital emergency room.  The physicians were not able to remove the wood initially and the injury required follow-up treatment, including surgery.  Lt. Stump went on light duty for ten days after this accident.  Lt. Stump applied for workers' compensation and eventually was rated with a 33% disability for his right thumb.

15.     Upon his return to work, Lt. Stump was derided and teased for supposedly having a "splinter" and taking time off from work.  Upon information and belief, USSS management has a negative view of officers who have repeated accidents and injuries.  Because of this culture, Lt.

Stump's professional esteem and reputation was unfairly lowered because of his medical related absences.

16.     Adding to this perception of Lt. Stump being disabled, USSS management, within approximately the same timeframe, also learned that Lt. Stump's son, Niklas, was disabled.

17.     Specifically, on April 2004, Lt. Stump's son was diagnosed with autism.   Lt. Stump may have told several of his co-workers about his son's condition.

18.     In May 2004, Lt. Stump's father died.   Curtis Eldridge, Chief of the UD, and Assistant Chief William Healy attended the funeral of Lt. Stump's father.   At the funeral, Lt. Stump's wife told several UD officials, including Chief Eldridge and Assistant Chief Healy, that their son had been diagnosed as autistic.

19.     While caring for an autistic child can be challenging, Lt. Stump is fully capable of meeting the special needs of his child and fulfilling all of his job duties, whether as a Lieutenant or as a Captain.   To accommodate his son's needs and to provide care, Lt. Stump works the night shift.   However, Lt. Stump is available and can work shifts other than the night shift as necessary for his job.

20.     However, in the highly militaristic and domineering work culture of the USSS, Lt. Stump was unfairly and discriminatorily perceived as being weakened and deficient because of his son's disability.   Lt. Sump began to realize that some USSS management officials had concerns about Lt. Stump's ability to perform his duties due to his need to care for his son. These biased perceptions and stereotypes were augmented by the medical leaves of absence taken by Lt. Stump for his on-the-job injuries in February 2004 and April 2005.

21.     Lt. Stump's fears were reinforced during a conversation he had with Inspector Ronald Ferguson.   Inspector Ferguson was a co-worker and former supervisor to Lt. Stump.   At

the time the conversation occurred, Inspector Ferguson worked in Chief Eldridge's office and had known the Chief for at least 20 years.  The conversation between Lt. Stump and Inspector Ferguson occurred by telephone during the first promotion cycle for the Captain position in approximately March or April 2005.

22.     Lt. Stump, who does not interact socially with Inspector Ferguson, was surprised to receive a phone call from Inspector Ferguson at his residence.  The phone call was unsolicited by Lt. Stump and it was highly unusual for Inspector Ferguson to contact Lt. Stump in this manner.   During the telephone call, Inspector Ferguson told Lt. Stump that, "midnight shifts work well for [you] given the situation with [your] injury and [your] son's problems.  Maybe it is not too bad to stay on as a Lieutenant for the rest of [your] career."  Inspector Ferguson's remark confirmed to Lt. Stump that, in the strict and regimented work culture of USSS, management wrongly and discriminatorily perceived Lt. Stump as being disabled, weakened by injury and personal misfortune.

<u>Agency Promotion Process and Procedure</u>

23.     Promotions to Captain in the USSS UD are made in cycles, typically biannually depending on Agency staffing needs.  Lt. Stump was eligible for promotion to Captain for two promotion cycles that occurred in November 2004 and October 2005.

24.     The promotion cycle for USSS UD is initiated by the development of a single "Promotion Register" which is created each promotion cycle with the names of all qualified Lieutenants eligible for promotion to Captain in rank order by score.  Thus, there was a single Promotion Register created for the cycle in November 2004 ("2004 Promotion Register") and the cycle in November 2005 ("2005 Promotion Register").

25.     From the Promotion Register, USSS creates a sub-document, entitled the "Merit Promotion Certificate."   The Merit Promotion Certificate is generated by listing the top 15 scoring candidates from the Promotion Register.  The names on each Merit Promotion Certificate are arranged in alphabetical order without reference to the numerical rank order on the Promotion Register.  Nonetheless, management officials are made aware of the ranking from the Promotion Register of each candidate on the Merit Promotion Certificate.

26.     The selecting official may select any of the individuals listed on the Merit Promotion Certificate for promotion to a vacant Captain position.   The Merit Promotion Certificate is essentially the same as the Promotion Register.  The main difference is that the Merit Promotion Certificate is generated from the Promotion Register when the Personnel Division is made aware of a potential vacancy during the promotion cycle.  The Merit Promotion Certificate, rather than the Promotion Register, is the document that is signed by the selecting official to formally certify that a selection has been made from the list of the most eligible candidates.

27.     At any point during the promotion cycle, a Lieutenant on the Promotion Register can be selected and promoted to Captain.  Promotion cycles occur over time, but only those Lieutenants on the Promotion Register are considered for advancement.  For example, the 2004 Promotion Register fielded candidates from November 1, 2004 until October 31, 2005. Similarly, the 2005 Promotion Register was in effect from November 1, 2005 until October 31, 2007.  If a Lieutenant is eligible for promotion and listed on the Promotion Register, the officer can be selected for Captain at any time until the end of the promotion cycle.  Thus, a final, adverse action does not occur until the last day of the promotion cycle which, in this case, was in October 2005 and October 2007.  Until that time, a promotion could occur from the single

Promotion Register developed for the cycle, thereby mooting any previous non-selection of a candidate during the promotion cycle.

28.     The USSS generally follows a nine-step process for promoting candidates to the Captain position.  First, USSS would become aware that a vacancy was likely to occur.  Second, Chief Eldridge would request that the Personnel Division send him a copy of the Merit Promotion Certificate for the vacancy.   Third, Chief Eldridge would forward the Merit Promotion Certificate to the Deputy Chiefs.  Fourth, the Deputy Chiefs, including Deputy Chief Kevin Simpson in this case, would meet and come to a conclusion on the recommended candidate or candidates.  Fifth, one of the Deputy Chiefs would typically send an email to Chief Eldridge with the Deputy Chiefs' recommended candidate(s).  Sixth, the Deputy Chiefs would meet with Chief Eldridge and Assistant Chief William Healy and discuss their recommendation. Seventh, Chief Eldridge would make the selection, complete and sign the Merit Promotion Certificate and forward a copy to personnel.  Eighth, Assistant Director Mark Sullivan would sign off on the decision of Chief Eldridge.  Ninth and last, the selected candidate would be promoted.

29.     Key decisions about the candidate who will be selected are made at the Deputy Chief meetings and at their meetings with Chief Eldridge and Assistant Chief Healy.  At the Deputy Chiefs' meeting, they discuss filling a particular vacancy and have a copy of the Merit Promotion Certificate, which lists the top 15 scoring candidates who are eligible from the Promotion Register, as well as a copy of the Promotion Register which lists all the Lieutenants in rank order.  Having worked closely with the Lieutenants, the Deputy Chiefs also "pretty much knew" all the Lieutenants under consideration.

30.     At the Deputy Chief meetings, the Deputy Chiefs would typically push or campaign for a specific candidate from their branch.   The Deputy Chiefs would discuss the candidates that had been advanced by the candidate's respective Deputy Chief and come to a consensus on who they would recommend for promotion.   If a particular candidate was not advanced by one of the Deputy Chiefs, the candidate would generally not even be discussed or considered for recommendation.   Deputy Chief Simpson, the Deputy Chief responsible for managing Lt. Stump, never pushed for Lt. Stump's promotion.

31.     Of particular significance for the process of promoting candidates to the Captain position is the fact that the applicant pool is the same for each promotion - all of the candidates are culled from the same Promotion Register.   For each promotion, therefore, essentially the same candidates are competing against each other unless one is removed from the process by virtue of being selected.   Also of significance is the fact that the exact same decision makers are involved in every selection during the promotion cycle and all of the candidates are vying for the same Captain position which has the same Position Description.

32.     In essence, although there could possibly be several promotions occurring over a period of time, each generation of a Promotion Register for a promotion cycle is analogous to a single promotion process for a Captain position.   As a point of fact, the only reason promotions occur over time is due to personnel attrition and the needs of the Agency to fill the position. Otherwise, a single promotion process once a year for all vacant Captain positions would be possible were it not for the vagaries of personnel allocation and retention.

33.     For the 2004 Promotion Register, USSS promoted seven (7) Lieutenants to Captain on December 21, 2004, January 5, 2005, February 16, 2005, March 10, 2005, April 11, 2005, and May 20, 2005.   The dates when the promotions occurred are arbitrary and random.

The dates only signify when USSS issued a Merit Promotion Certificate.  Lt. Stump was denied promotion to Captain during the entire promotion cycle for the 2004 Promotion Register. Further, Lt. Stump's claims were not ripe until the promotion cycle ended and it was clear that USSS did not select him for promotion to Captain based upon his eligibility under the 2004 Promotion Register.

November 2004 Promotion Process

34.    USSS lacks specific criteria for deciding which candidates from the Promotion Register and the Merit Promotion Certificate will be selected for promotion to Captain. Generally, when asked about the selection process, the decision-makers pointed to vague and conclusory criteria such as choosing the "best candidate" or the "strongest leader."

35.    However, it is clear that the one specific factor that has always been used as a decisive criterion for promotion to the Captain position is a candidate's rank on the Promotion Register generated for the promotion cycle under consideration.   When asked about the promotion process, Chief Eldridge was unequivocal in his position that USSS followed the ranking of the candidates on the Promotion Register for a given promotion cycle "unless there was an overwhelming reason why we shouldn't have selected someone."  USSS, then, always selects the candidate who has the highest score unless there is a specific reason not to select the candidate.

36.    For the 2004 Promotion Register, which was in effect from November 1, 2004 until October 31, 2005, Lt. Stump was ranked second on the list.

37.    Only Alfonso Dyson was ranked higher than Lt. Stump on the 2004 Promotion Register.   After Dyson was promoted, Lt. Stump was the highest ranked candidate, but USSS

selected six (6) candidates other than Lt. Stump who scored lower than Lt. Stump. And, some of the candidates USSS selected were even ranked near the bottom of the eligibility cutoff.

38.     USSS management officials cannot explain and have provided absolutely no reason why Lt. Stump, the second strongest candidate, was not selected from the 2004 Promotion Register. Indeed, USSS management officials have asserted that they cannot recall anything specific about the promotion decisions for the 2004 Promotion Register.

39.     It is undisputed that Lt. Stump was among the highest ranked candidates, and that he was obviously qualified for the position given his ranking and experience. Further, Lt. Stump could have performed the duties of the Captain position as he returned to work in a restricted duty capacity in October 2004 and full duty status in January 2005.

40.     Additionally, the Merit Promotion regulations for USSS explicitly provide that even if a candidate is on light duty, USSS management must still consider that candidate for promotion. Thus, any time off or light duty status related to Lt. Stump's February 4, 2004 or April 7, 2005, workplace injuries should not have interfered or precluded consideration of Lt. Stump for promotion.

41.     Yet, Chief Eldridge has stated that he does not recall any discussions regarding Lt. Stump's eligibly for promotion. Similarly, although Deputy Chief Simpson has stated that Lt. Stump's candidacy was discussed by the decision-makers, Chief Simpson provided no details about those discussions or any specific reason not to select the second highest ranked candidate, namely Lt. Stump. Therefore, USSS management officials have no legitimate business reason for deviating from the ordinary practice of selecting candidates in rank order with respect to the 2004 Promotion Register.

42.     USSS management officials have stated that they did not change the criteria for selecting candidates from the 2004 and 2005 Promotion Register.  In fact, USSS placed the same weight on the scores and used the same process for each promotion cycle.  Despite this, the selection process and results for the 2004 and 2005 Promotion Register were diametrically opposed and dramatically different.

43.     USSS made seven (7) promotions from the 2004 Promotion Register.  However, these promotions were not made in rank order.  In fact, not only was Lt. Stump, the second highest ranked candidate not selected, but also USSS also picked the lowest ranked candidates on the 2004 Promotion Register to promote first.

44.     In sharp contrast, every single promotion from the 2005 Promotion Register was made in rank order.  Unlike the 2004 promotion cycle, Lt. Stump was ranked number twenty-eight (28) on the 2005 Promotion Register.

45.     Chief Eldridge has stated that USSS UD management "didn't feel like our strongest candidates were necessarily at the very top of the [2004 Register]."  In comparison, Chief Eldridge stated that USSS UD management was "all pretty satisfied that the [2005 Register] provided us with a pretty sound list."

46.     Deputy Chief Simpson has also expressed Chief Eldridge's sentiment, stating that the 2005 Promotion Register "was a very good list and all of those [on the eligible section] were strong candidates."

47.     However, neither Chief Eldridge nor Deputy Chief Simpson has provided a specific reason why the 2004 Promotion Register was supposedly weaker than the 2005 Promotion Register.  USSS cannot explain or clarify why the two promotion registers were perceived by the decision-makers as being so starkly different.  Nonetheless, one plain and

significant difference is the fact that Lt. Stump was ranked second on the 2004 Promotion Register and inexplicably ranked twenty-eighth on the very next promotion cycle despite the fact that the ranking criteria were exactly the same.

48.     Upon information and belief, discovery will yield additional facts and information to support the contention that promoting the lowest ranked candidates from the 2004 Promotion Register was a major deviation from the normal selection process.

49.     By way of example and illustrative of the bias of USSS' decision-making, USSS selected William Vucci for promotion to Captain from the 2004 Promotion Register despite the fact that Vucci was ranked significantly lower than Lt. Stump.   In explaining its decision to promote Vucci over Lt. Stump, the second ranked candidate, USSS asserted that Vucci had more experience in USSS than Lt. Stump.   Chief Eldridge also claimed that Vucci was the best candidate for promotion based on input from the Deputy Chiefs of the UD.

50.     In fact, although Vucci was hired in 1983 and Lt. Stump was hired in 1984, Lt. Stump actually had greater time-in service with the USSS UD than any other candidate selected except for Vucci.   As a point of fact, Lt. Stump even trained three of the promoted candidates. Thus, the rationale advanced by USSS concerning seniority was not a factor in the selection of the other candidates promoted over Lt. Stump for Captain.   This is a major inconsistency in USSS' proffered reason for the non-selection of Lt. Stump.   Also, USSS ignores the fact that Lt. Stump actually had more time-in service as a Lieutenant than Vucci and all the other selectees for the 2004 Promotion Register.   Upon information and belief, time-in service as a Lieutenant has also been a significant factor in the decision-making process and typically candidates with the most time serving as a Lieutenant are ordinarily selected over those with less time in that rank.

51.     Lt. Stump was also intimidated and discouraged from filing his EEO Complaint early in the promotion cycle for the 2004 Promotion Register.  Lt. Stump wanted to follow the chain of command and speak with Deputy Chief Simpson about why he was not being promoted. However, Lt. Stump was still on the 2004 Promotion Register and he had reasonable concerns that if he complained about the process, he would be blackballed and excluded from consideration for the remaining promotion cycle.

52.     Accordingly, Lt. Stump spoke to Inspector Quesinberry about his concern that he was ranked second and not quickly selected during the promotion cycle.  Inspector Quesinberry confirmed Lt. Stump's fears and further substantiated that if he complained, USSS management would look disfavorably upon his candidacy.  Specifically, Inspector Quesinberry initially told Lt. Stump that, "he should hang in there because he had a good shot at getting another promotion off the same list."  When Lt. Stump continued to push the matter, Inspector Quesinberry also told Lt. Stump that, if he went to Deputy Chief Simpson, he would be the "laughing stock" of UD and it would be the death of Lt. Stump's career.  Inspector Quesinberry made it plain to Lt. Stump that, if he filed a complaint, Lt. Stump's career with USSS would be finished which deterred Lt. Stump from asserting his rights.  In fact, now approximately ten (10) years later, Lt. Stump's career has been stagnant and he has not been promoted.

53.     Lt. Stump also spoke to Inspector Ferguson about his concerns of not being promoted.  Inspector Ferguson told Lt. Stump that Lt. Stump would not get any information from Deputy Chief Simpson, an unmistakable deterrent to pursuing the matter.

54.     As the promotion cycle progressed for the 2004 Promotion Register, Lt. Stump became more concerned and expressed to an EEO representative, in June 2005, that his non-selection was discriminatory.  Instead of encouraging Lt. Stump to file, the EEO representative

told Lt. Stump that he did not have a case and tried to steer him away from asserting a discrimination claim.

November 2005 Promotion Process

55.     Under USSS UD's Merit Promotion Plan, the ranking for the candidates for the Promotion Register is based on a combination of three (3) criteria, namely the Supervisory Evaluation, the Deputy Chief Review and the Oral Interview Panel ("OIP") score.   The Supervisory Evaluation and OIP score comprise 30% each of the total score.   The remaining 40% is comprised of the Deputy Chief Review.

56.     The overall scores of all of the candidates on the 2005 Promotion Register were lower than that of 2004.   In fact, the median score of the highest ranked (15) fifteen candidates was lower by 5.0 points.   By comparison, Lt. Stump's score was lower by a much larger amount – 14.0 points.

57.     On the Supervisory Evaluation component of Lt. Stumps' ranking, his score in 2005 was 1.2 points lower than 2004.

58.     On the Deputy Chief Review component of Lt. Stumps' ranking, his score in 2005 was 3.3 points lower than 2004.   The Deputy Chief Review component is highly subjective and subject to extensive bias, as the same Deputy Chiefs are involved in each promotion cycle and are the same ones who were responsible for this evaluation.   Had Lt. Stump's score not been lowered on the Deputy Chief Review component, Lt. Stump would have likely been ranked number nineteen on the 2005 Promotion Register.

59.     The OIP component is comprised of two parts, a written and oral evaluation.   On the written portion of the OIP, Lt. Stump's score in 2005 was 2 points higher than 2004.   This

portion of the OIP is the least subject to bias because it is the only portion that is graded anonymously.

60.    However, in the much more subjective and discretionary oral portion, Lt. Stump's score was 9.5 points lower than 2004.  The subjective nature of this criterion is buttressed by the fact that the comments made by the panel members were unsubstantiated and ambiguous such as Lt. Stump supposedly did "too much rambling," "totally confused me," "read too much into questions," "jumped back to prior questions," and "added to the story."

61.    The decreased score on the oral OIP was a significant factor in Lt. Stump's precipitous fall from being the second highest ranked candidate in 2004 to astonishingly ranking just 28 on the 2005 Promotion Register.  As a point of fact, the significantly lowered score on the highly subjective oral OIP criteria resulted in Lt. Stump only achieving a score of 66.893.  Had Lt. Stump's score not been lowered on the oral OIP component, Lt. Stump would have likely been ranked number two on the 2005 Promotion Register, the same as he had been ranked the year before.

62.    As a result of USSS' manipulation of the subjective components of Lt. Stump's ranking, Lt. Stump did not rank among the top 15 candidates for the 2005 Promotion Register.

63.    Yet, Lt. Stump's performance did not change from the 2004 promotion cycle to the 2005 and his annual performance ratings remained above average.  Lt. Stump also received cash awards during this time period.

64.    Lt. Stump's lowered score on the 2005 Promotion Register ensured and made certain that USSS UD's management had a convenient and expedient pretext not to promote Lt. Stump to Captain for that promotion cycle.

65.     As a direct and proximate result of the unlawful acts of the USSS and/or agents or employees acting on its behalf, including Chief Eldridge and Deputy Chief Simpson among others, Lt. Stump has suffered grievous harm to his professional career.  This harm includes, but is not limited to, loss of substantial past and future salary, awards, benefits and entitlements, loss of professional status, career-enhancing and advancement opportunities and loss of retirement and other employment benefits and privileges. Specifically, Lt. Stump was discriminatorily denied promotion to Captain based upon the 2004 Promotion Register (in effect from November 1, 2004 until October 31, 2005) and the 2005 Promotion Register (in effect from November 1, 2005 until October 31, 2007).   Furthermore, as a direct and proximate result of being denied advancement to the rank of Captain, Lt. Stump has not been able to advance to the rank of Inspector as many of his colleagues and similarly-situated officers have achieved at this same point in their career.

66.     As a direct and proximate result of the actions by the USSS and/or agents or employees acting on its behalf, including Chief Eldridge and Deputy Chief Kevin Simpson among others, Lt. Stump has suffered from emotional distress arising from the loss of being denied advancement in his career for discriminatory reasons, embarrassment, humiliation and indignity, as well as damage to his professional reputation and career.

## EXHAUSTION OF REMEDIES

67.     Lt. Stump has exhausted all administrative requirements that apply to the processing of his complaint, including the filing of an informal and a formal complaint with the Agency's EEO office and the issuance of a Final Agency Decision.

## STATEMENT OF CLAIMS

### COUNT I:  Violation of the Americans with Disabilities Act, As Amended Disability Discrimination.

68.    Lt. Stump adopts and incorporates by reference all averments in the foregoing paragraphs.

69.    The ADA prohibits employers from discriminating against its employees because of a disability.

70.    Defendant, the DHS/USSS UD, was, at all times relevant to this matter, the employer of Lt. Stump for all purposes under the ADA.

71.    As a result of an on-the-job injury in February 2004, Lt. Stump was diagnosed with herniated disks in his back and neck.  From approximately February 2004 to October 2004, Lt. Stump was on leave without pay and receiving workers compensation.

72.    Lt. Stump's disability caused him to have a loss of strength in his left arm and numbness.  Lt. Stump further had difficulty sleeping and often slept in a chair instead of a bed.  Lt. Stump only partially recovered from his injuries and will need surgery to correct the condition.

73.    Lt. Stump's disability caused him to be substantially limited in the major life activities of working, walking, lifting, sleeping and concentrating, among others, during his recuperation.

74.    Lt. Stump sustained a serious on-the-job injury in April 2005 which required surgery on his right hand.  As a result of a workers' compensation claim, Lt. Stump was rated with a 33% disability in his right thumb.

75.     Lt. Stump returned to full duty status from his work-related accidents in February 2004 and April 2005.  Lt. Stump recovered sufficiently to perform his duties as Lieutenant and would have been able to perform all the duties of the Captain position.

76.     USSS and/or agents or employees acting on its behalf, including Chief Eldridge and Deputy Chief Simpson among others, knew of Lt. Stump's disability during the relevant time period for the promotion cycles at dispute.

77.     Defendant discriminatorily denied Lt. Stump promotion to the rank of Captain because of his disability based upon Defendant's failure to select Lt. Stump during the 2004 Promotion Register (in effect from November 1, 2004 until October 31, 2005) and the 2005 Promotion Register (in effect from November 1, 2005 until October 31, 2007).

78.     As a direct and proximate result of the unlawful acts of the USSS and/or agents or employees acting on its behalf, including Chief Eldridge and Deputy Chief Simpson among others, Lt. Stump has suffered grievous harm to his professional career.  This harm includes, but is not limited to, loss of substantial past and future salary, awards, benefits and entitlements, loss of professional status, career-enhancing and advancement opportunities and loss of retirement and other employment benefits and privileges.

79.     As a direct and proximate result of being denied advancement to the rank of Captain, Lt. Stump has not been able to advance to the rank of Inspector as many of his colleagues and similarly-situated officers have achieved at this same point in their career.  The inability to advance to the rank of Inspector has caused Lt. Stump to lose the salary increase and professional status associated with that advancement.

80.     As a direct and proximate result of the actions by the USSS and/or agents or employees acting on its behalf, including Chief Eldridge and Deputy Chief Kevin Simpson

among others, Lt. Stump has suffered from emotional distress arising from the loss of being denied advancement in his career for discriminatory reasons, embarrassment, humiliation and indignity, as well as damage to his professional reputation and career.

81.     As a consequence of Defendant's unlawful actions, Defendant is additionally liable to Lt. Stump for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

**COUNT II:   Violation of the Americans with Disabilities Act, As Amended Discrimination Based Upon a Perceived Disability.**

82. Lt. Stump adopts and incorporates by reference all averments in the foregoing paragraphs.

83. The ADA prohibits employers from discriminating against its employees because of a perceived disability.

84. Defendant, the DHS/USSS UD, was, at all times relevant to this matter, the employer of Lt. Stump for all purposes under the ADA.

85. As a result of an on-the-job injury in February 2004, Lt. Stump was diagnosed with herniated disks in his back and neck.  From approximately February 2004 to October 2004, Lt. Stump was on leave without pay and receiving workers compensation.

86. Lt. Stump's disability caused him to have a loss of strength in his left arm and numbness. Lt. Stump further had difficulty sleeping and often slept in a chair instead of a bed.  Lt. Stump only partially recovered from his injuries and will need surgery to correct the condition.

87. Lt. Stump's disability caused him to be substantially limited in the major life activities of working, walking, lifting, sleeping and concentrating, among others, during his recuperation.

88. Lt. Stump sustained a serious on-the-job injury in April 2005 which required surgery on his right hand. As a result of a workers' compensation claim, Lt. Stump was rated with a 33% disability in his right thumb.

89. Lt. Stump returned to full duty status from his work-related accidents in February 2004 and April 2005. Lt. Stump recovered sufficiently to perform his duties as Lieutenant and would have been able to perform all the duties of the Captain position. Nonetheless, USSS management considered and perceived Lt. Stump to be disabled.

90. USSS and/or agents or employees acting on its behalf, including Chief Eldridge and Deputy Chief Simpson among others, knew of Lt. Stump's disability during the relevant time period for the promotion cycles at dispute. USSS and/or agents or employees acting on its behalf, including Chief Eldridge and Deputy Chief Simpson among others, further perceived Lt. Stump as being disabled.

91. Defendant discriminatorily denied Lt. Stump promotion to the rank of Captain because of his perceived disability based upon Defendant's failure to select Lt. Stump during the 2004 Promotion Register (in effect from November 1, 2004 until October 31, 2005) and the 2005 Promotion Register (in effect from November 1, 2005 until October 31, 2007).

92. As a direct and proximate result of the unlawful acts of the USSS and/or agents or employees acting on its behalf, including Chief Eldridge and Deputy Chief Simpson among others, Lt. Stump has suffered grievous harm to his professional career. This harm includes, but is not limited to, loss of substantial past and future salary, awards, benefits and entitlements, loss of professional status, career-enhancing and advancement opportunities and loss of retirement and other employment benefits and privileges.

93. As a direct and proximate result of being denied advancement to the rank of Captain, Lt. Stump has not been able to advance to the rank of Inspector as many of his colleagues and similarly-situated officers have achieved at this same point in their career. The inability to advance to the rank of Inspector has caused Lt. Stump to lose the salary increase and professional status associated with that advancement.

94. As a direct and proximate result of the actions by the USSS and/or agents or employees acting on its behalf, including Chief Eldridge and Deputy Chief Kevin Simpson among others, Lt. Stump has suffered from emotional distress arising from the loss of being denied advancement in his career for discriminatory reasons, embarrassment, humiliation and indignity, as well as damage to his professional reputation and career.

95. As a consequence of Defendant's unlawful actions, Defendant is additionally liable to Lt. Stump for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

**COUNT III:  Violation of the Americans with Disabilities Act, As Amended Discrimination Based Upon Association with a Disabled Person.**

96. Lt. Stump adopts and incorporates by reference all averments in the foregoing paragraphs.

97. The ADA prohibits employers from discriminating against its employees because of that employee's association with a person with a disability.

98. Defendant, the DHS/USSS UD, was, at all times relevant to this matter, the employer of Lt. Stump for all purposes under the ADA.

99. USSS and/or agents or employees acting on its behalf, including Chief Eldridge and Deputy Chief Simpson among others, knew of Lt. Stump's association with his son, Niklas, who is disabled and diagnosed with autism.

100.     Lt. Stump was able to perform his duties as Lieutenant and would have been able to perform all the duties of the Captain position while simultaneously caring for his autistic child.

101.     USSS and/or agents or employees acting on its behalf, including Chief Eldridge and Deputy Chief Simpson among others, had biased perceptions and stereotypes against Lt. Stump due to his association with his disabled son.

102.     USSS and/or agents or employees acting on its behalf, including Chief Eldridge and Deputy Chief Simpson among others, knew of Lt. Stump's association with his disabled son during the relevant time period for the promotion cycles at dispute.

103.     Defendant discriminatorily denied Lt. Stump promotion to the rank of Captain because of his association with his disabled son based upon Defendant's failure to select Lt. Stump during the 2004 Promotion Register (in effect from November 1, 2004 until October 31, 2005) and the 2005 Promotion Register (in effect from November 1, 2005 until October 31, 2007).

104.     As a direct and proximate result of the unlawful acts of the USSS and/or agents or employees acting on its behalf, including Chief Eldridge and Deputy Chief Simpson among others, Lt. Stump has suffered grievous harm to his professional career.  This harm includes, but is not limited to, loss of substantial past and future salary, awards, benefits and entitlements, loss of professional status, career-enhancing and advancement opportunities and loss of retirement and other employment benefits and privileges.

105.     As a direct and proximate result of being denied advancement to the rank of Captain, Lt. Stump has not been able to advance to the rank of Inspector as many of his colleagues and similarly-situated officers have achieved at this same point in their career.

The inability to advance to the rank of Inspector has caused Lt. Stump to lose the salary increase and professional status associated with that advancement.

106.     As a direct and proximate result of the actions by the USSS and/or agents or employees acting on its behalf, including Chief Eldridge and Deputy Chief Kevin Simpson among others, Lt. Stump has suffered from emotional distress arising from the loss of being denied advancement in his career for discriminatory reasons, embarrassment, humiliation and indignity, as well as damage to his professional reputation and career.

107.     As a consequence of Defendant's unlawful actions, Defendant is additionally liable to Lt. Stump for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

## RELIEF SOUGHT

**WHEREFORE**, Lt. Stump requests that this Court award damages against Defendant and respectfully requests the Court to:

A.     Enter judgment for Lt. Stump against Defendant on all Counts;

B.     Declare that Defendant subjected Lt. Stump to disability discrimination because of his disability in violation of Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*;

C.     Declare that Defendant subjected Lt. Stump to disability discrimination because of a perceived disability in violation of Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*;

D.     Declare that Defendant subjected Lt. Stump to disability discrimination because of his association with a disable person in violation of Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*;

E.      Award Lt. Stump full back pay and front pay, including salary, benefits, entitlements, loss of professional status and career-enhancing opportunities, cash awards, loss of retirement savings and benefits, and other remuneration and privileges of employment retroactive to the date of any unlawful action found to have occurred in this case;

F.      Award Lt. Stump compensatory damages for the emotional distress injuries and losses that he suffered in an amount to be proved at trial;

G.      Award Lt. Stump pecuniary and out of pocket expenses;

H.      Enjoin Defendant from future retaliation and discrimination against Lt. Stump;

I.      Order Defendant to pay all reasonable attorneys' fees, court costs, and expenses Lt. Stump has and will incur as a result of Defendant's actions and inactions, as well as pre-judgment and post-judgment interest; and,

J.      Order such other equitable and legal relief as the Court deems necessary and appropriate to make Lt. Stump whole.


## JURY DEMAND

Lt. Stump requests a trial by a jury as to all claims set forth in this Complaint.


Respectfully submitted,

 _/s/ Camilla C. McKinney_____
Camilla C. McKinney, Esq.
D.C. Bar No. 448776
McKinney & Associates, PLLC
1625 Prince Street, Suite 230
Alexandria, VA  22314
(703) 717-9428 (telephone)
(877) 590-4777 (facsimile)
CMcKinney@DCEmploymentLawyer.com
*Attorneys for Plaintiff Joseph E. Stump*